# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE

| | |
|---|---|
| JOHN DOE, individually and on behalf of all others similarly situated, <br><br> Plaintiffs. <br><br> v. <br><br> CORECIVIC OF TENNESSEE, LLC f/k/a CORRECTIONS CORPORATION OF AMERICA <br><br> Defendant. | Civil Action No. _____ <br><br> **CLASS ACTION** |

## CLASS ACTION COMPLAINT

**COMES NOW** the Plaintiff, John Doe, individually and on behalf of all others similarly situated, and for their causes of action against the Defendant would allege as follows:

### PRELIMINARY STATEMENT

1. The Plaintiff and the proposed class, as defined in Paragraphs 74 *et seq.*, include those individuals currently and formerly housed at the Metro-Davidson County Detention Facility in Davidson County, Tennessee, a private prison owned and operated by CoreCivic, an entity formerly doing business as Corrections Corporation of America ("CCA"). During the time of incarceration, the Plaintiff and proposed class were entirely dependent on the Defendants to provide them with access to basic health care. However, they have been, and with regard to those still incarcerated, continue to be deprived of access to basic healthcare.

1

2. Plaintiff files this Class Action seeking damages on behalf of themselves and all others similarly situated due to the Defendant's deliberate indifference to their serious medical needs while they were incarcerated, in violation of the Eighth and Fourteenth Amendments to the United States Constitution and their prohibition against cruel and unusual punishment.

3. Plaintiff and all Class Members were exposed to *Sarcoptes scabiei* (hereafter "Scabies") caused by the spread of parasitic mites. Scabies is most easily transmitted by skin-to-skin contact, bedding, clothing and towels. Female mites burrow under the skin, lay their eggs at the end of the tunneled burrows, and larvae hatch two to three days after the eggs are laid. The mites cause intense itching, which facilitates re-infestation and skin eruptions that transfer the mites to new hosts.

4. Defendant operates a private for-profit prison and therefore had direct control of the prisoners and detainees in its charge infected with scabies. The Defendant deliberately failed to adequately screen those entering its facility, respond to inmate requests for medical attention, treat those infested with the parasite, quarantine the infected individuals in its care, or to take any other precautions to prevent the spread of scabies outside the facility. This caused a foreseeable and preventable systematic outbreak which spread to the Plaintiff and all others similarly situated.

## THE PARTIES

5. Plaintiff John Doe is a citizen of the State of Tennessee and a resident of Davidson County, Tennessee. He is a former inmate who was housed in the Defendant's facility in Davidson County. Plaintiff wishes to use the pseudonym "John Doe" because he fears retaliation.

6. The Defendant, CoreCivic of Tennessee, LLC, f/k/a Corrections Corporation of American ("CCA"), is a limited liability company organized under the laws of the State of Tennessee, with its principal place of business located at 10 Burton Hills Blvd., Nashville, TN 37215. CoreCivic's registered agent for process in the State of Tennessee is C T Corporation System, 800 S. Gay St., Suite 2021, Knoxville, TN 37929-9710. The Defendant owns and operates the Metro-Davidson County Detention Facility, housing prisoners sentenced to confinement in the Tennessee Department of Correction. As such, CCA performs a public function traditionally reserved to the state and is therefore subject to suit under 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

7. This action is brought pursuant to 42 U.S.C. § 1983 seeking to redress a deprivation of the Plaintiffs' rights by the Defendants acting under color of law, which rights are secured by the Eighth and Fourteenth Amendments to the United States Constitution.

8. This complaint concerns the violation of civil rights, and this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 1343.

9. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

10. All of the claims alleged herein arose in the Middle District of Tennessee, and Venue is therefore proper pursuant to 28 U.S.C. § 1391.

## ALLEGATIONS OF FACT

11. As the allegations of this Complaint will demonstrate, the Defendant refused to provide the healthcare needed and requested by Plaintiff and members of the class. The Defendant refused to provide access to doctors and necessary medicine to treat the scabies infestation

of the inmate population, during which time the infestation spread and the Plaintiff class's condition worsened.

12. In the Winter and Spring of 2017, there was a scabies outbreak in the Defendant's 1,300-bed jail facility in Nashville, Tennessee. The outbreak spread through various facilities in and around Nashville, Tennessee, which infested inmates, detainees, and those likely to come in contact with them, including court staff in Davidson County. Those infested with the parasite develop a visible rash, which was made known to the Defendant by observation and by frequent complaints, grievances, and requests for medical treatment by the inmates.

13. The scabies infestation leads to relentless and unbearable itching, especially at night. The rash results in scales, blisters, bleeding, and open sores caused by scratching. The rash caused by scabies infestation is readily distinguishable from other skin maladies due to the appearance of track-like burrows in the skin, which are created when female mites tunnel under the surface of the skin. Due to the severity of the itching at night, those infested with the parasite experience an inability to sleep until they have been treated and the infestation is in remission. The infestation results in permanent, visible scarring.

14. Plaintiff John Doe transferred to the Defendant's facility in August 2016 to serve a sentence for a DUI conviction. He became a trustee who assisted with the maintenance of the Defendant's facility. Plaintiff was placed in the living area for older inmates and those with physical and mental disabilities.

15. The Defendant houses pretrial detainees with other inmates serving sentences. There is no distinction in the conditions of their confinement.

16. The Defendant frequently received and housed members of the homeless population, who would cycle in and out of the facility on a regular basis. These individuals had no health care and were susceptible to a scabies infestation.

17. Upon his arrival, Plaintiff was not provided a medical screening prior to being placed in the general population at the Defendant's facility. The Defendant did not employ any person or have any protocol to screen individuals for infectious diseases or parasites, enabling the introduction and spread of diseases from the new arrivals to existing inmates.

18. Plaintiff's pod had approximately 140 inmates. The beds were cramped and inmates had to touch other inmate's beds in order to ascend and descend their bunks.

19. Numerous inmates developed a visible red rash on their bodies consistent with scabies infestation. They frequently complained about their condition, filing numerous sick calls and grievances, all of which were ignored by the Defendant.

20. Several inmates in Plaintiff's bunk area played cards with inmate C.M., who had the rash on his hands. After playing cards with C.M., the inmates also developed the rash on their hands and arms, which spread to other areas of their body.

21. Plaintiff attempted to avoid exposure to inmates who had the rash, which was quickly spreading among other inmates. He ate his meals on his bunk, stayed on his bunk, and tried to avoid the common areas.

22. In October 2016, Plaintiff developed symptoms of a scabies infestation, including red bumps, track-like burrow marks, and an intense and painful itching near the sores. Plaintiff needed a health screening in order to work at the Defendant's facility. Plaintiff was screened for the first time ninety (90) days after his arrival, and he complained about the rash that was spreading over his body. He complained generally about the screening

procedure, including the reason he was not given a TB test. The Defendant stated that Plaintiff would be provided with a TB test, which never happened. The Defendant falsely informed Plaintiff that the rash was caused by contact dermatitis, a reaction to the water, or "something in the laundry."

23. Because Plaintiff's initial request for medical attention was ignored, he filed a sick call request in November of 2016. He noted that he had developed the rash several weeks prior, and that it had spread over his arms and legs. He complained that the itching would not stop.

24. Because the Defendant refused to address the Plaintiff's medical needs, Plaintiff asked a friend to download the "WebMD" Internet page describing scabies. Plaintiff provided the printout to the Defendant, who still ignored Plaintiff's complaint.

25. Plaintiff began working as a trustee in December of 2016. His job was to assist with the maintenance of and repairs to the Defendant's facility.

26. In furtherance of his work, Plaintiff moved around the pods for both the male and female populations. He observed individuals in every pod who had symptoms of the scabies rash and were openly complaining about a scabies infestation.

27. Plaintiff was concerned about the Defendant's failure to provide medical treatment. He feared that he would spread it to other areas of the prison. In December of 2016, Plaintiff submitted another sick call request, stating specifically that he had scabies and begging for help, to no avail.

28. At least 40 inmates in Plaintiff's pod had contracted scabies. Following numerous complaints, the Assistant Warden came and spoke with the inmates on one occasion. He stated that he would "get with medical" to address the situation, but never did so.

29. Plaintiff and other inmates feared retaliation for trying to obtain medical assistance. The Defendant's personnel frequently intimidated inmates, falsely and impertinently stating that Davidson County judges had a financial interest in CoreCivic, ownership of stock, and that the Plaintiff class would lose any lawsuit filed against the company.

30. Numerous men in Plaintiff's pod suffered from physical and mental handicaps and/or disorders. The handicapped population was particularly vulnerable to abuse and neglect because they were unable to care for themselves. Although the handicapped inmates were covered with obvious scabies infestations, the Defendant was unwilling to offer them any assistance. By nature of their disabilities, they were unable to determine what was wrong, how to voice their concerns, and how to seek medical attention.

31. Because of their disability, numerous handicapped individuals would not shower for several weeks, allowing scabies to spread throughout their bodies and the general population.

32. An inmate who had transferred from West Tennessee informed Plaintiff and others that his prior facility had also been infested with scabies. He informed the Defendant that the men were suffering from a scabies infestation, but his complaints were ignored.

33. Toward the end of December 2016, Plaintiff had still not been treated for the scabies infestation after suffering for over three (3) months. Plaintiff finally complained that, because he was moving in and out of the Warden's office, he needed treatment to avoid spreading it to him. The Defendant finally treated Plaintiff for scabies in January 2017, but only because of his proximity to the Warden.

7

Case 3:17-cv-00958   Document 1   Filed 06/19/17   Page 7 of 19 PageID #: 7

34. On or about January, 2017, an employee of the state came to test the water at the facility. Despite no finding of contamination, the Defendant continued to deny a scabies infestation, stating that the water was the source of the rash.

35. When treating a scabies infestation, the Defendant is required to gather the inmate's contaminated clothes in a biohazard bag, to be washed separately. The Defendant refused to do so, however, and washed the contaminated clothes together with those of healthy individuals, both male and female.

36. As part of his job duties, Plaintiff worked on the boilers and other areas around the Defendant's facility. Although the prison boilers are supposed to maintain a temperature of 160 degrees in order to sanitize laundry, the Defendant's boiler temperature would frequently fail to meet that temperature. Plaintiff complained about an inability to repair certain items and spoke to one of the Defendant's employees. The employee informed Plaintiff that, because the building belonged to Metro and CoreCivic only leased the premises, they only needed to perform the bare minimum repairs in order to temporarily fix a problem. The employee explained that the Defendant did not want to spend money on the repairs.

37. Like Plaintiff, inmate D.B. was infested with scabies for many months. His requests for medical attention, complaints, and grievances were ignored. On or after January 2017, D.B.'s wife reported the Defendant to the Metropolitan Health Department, but no action was taken. Around this time, a group of inmates reached out to the ACLU for assistance with treatment of the scabies infestation. Because of the Defendant's delay and refusal to treat D.B., he developed scarring all over his body.

38. Inmate J.N. is housed at the Defendant's facility. He frequently complained about the rash over his body. His sick calls and complaints were ignored. His mother informed the Defendant that her son's rash appeared to be scabies, which the Defendant denied. In response to his requests for medical attention and complaints, the Defendant threatened J.N. instead of providing treatment. Because he was unable to sleep and constantly suffered from the itching, J.N. suffered a mental breakdown. The Defendant placed J.N. in solitary confinement without treatment. J.N.'s mother contacted the Defendant's medical staff and begged for assistance for her son, which was ignored. Sometime later, J.N. was provided Benadryl but not anti-scabies medication, which only masked his symptoms without treating the underlying infestation.

39. Although Plaintiff received medication to treat scabies, the Defendant took no other action to quarantine infested individuals from the general population. The Defendant would only launder the inmate's wool blankets once every 30 to 90 days, enabling the scabies to re-infest individuals who received treatment.

40. Plaintiff was not rid of the parasite after the initial dose of medication in January. He submitted additional sick call requests. In March of 2017, Plaintiff complained that he had not received his scabies medication, despite it being ordered four days earlier. Plaintiff filed another sick call request three days later, stating that his prescriptions had been renewed, but that he had not received them.

41. Plaintiff ultimately had scabies for six months, and has been treating since his release in May of 2017. Plaintiff has incurred medical expenses. He has been unable to return to work due to the risk of spreading the disease to his coworkers and has incurred lost wages.

42. Despite actual knowledge of the infestation among the prisoner population, and the intensely contagious nature of it, the Defendant failed to take reasonable steps to mitigate the infestation, to quarantine inmates, or to treat those afflicted with a known scabies infestation.

43. The spread of the infestation was reasonably foreseeable. As a direct and proximate result of the Defendant's acts and omissions, the Plaintiff and class members became infested. Plaintiff and the class members were forced to endure painful, itching rashes and sleeplessness while they were housed at the facility. After their release, they were forced to be quarantined, to be absent from work, to miss important family functions and event, during the time they were quarantined and recovering from the infestation. They have incurred the costs of medical treatment, which is ongoing. The scabies mites have spread within their homes, to their children and other family members.

44. Plaintiff and the class members have incurred additional expenses for cleaning supplies and professional cleaning services to mitigate and remediate the scabies infestations in their home.

45. Plaintiff and the class members have experienced and continue to experience pain, suffering and emotional distress and humiliation from the scabies infestations within their bodies and their homes.

## ADMINISTRATIVE PREREQUISITES

46. Plaintiff and the class members have complied with all requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA") and had exhausted their administrative remedies. Plaintiff's numerous grievances were deliberately ignored by the

Defendant, and they therefore had no ability to appeal any decision, none having been made by the Defendant.

47. Because the Defendant's conduct indefinitely delayed and nullified any administrative process, the administrative remedies required of the PLRA were unavailable to Plaintiff and other class members.

48. To the extent that administrative remedies remain unexhausted for those still housed at the facility, those Plaintiffs are entitled to injunctive relief while they continue to exhaust administrative grievance procedures.

49. The PLRA is inapplicable to Plaintiff and those class members who are no longer confined in the Defendant's facility.

## CAUSES OF ACTION

### COUNT I: DELIBERATE INDIFFERENCE TO PLAINTIFFS' SERIOUS MEDICAL NEEDS IN VIOLATION OF PLAINTIFFS' RIGHTS GUARANTEED BY THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION

**[42 U.S.C. § 1983]**

50. The Defendant is a private entity that contracts to perform traditional state function of operating a prison, and the Defendant's employees performed governmental functions. The Defendant's officials therefore acted under color of law.

51. The Defendant's official policies and customs of ignoring and/or substantially delaying requests for medical treatment caused the violation of the Plaintiffs' constitutionally protected rights.

52. Plaintiff's infestation with scabies constituted a sufficiently serious medical need for treatment. Plaintiffs were confined under conditions posing a substantial risk of serious harm.

11

53. Due to the extremely contagious nature of scabies infestations, the failure to promptly treat scabies posed an obvious and substantial risk of harm to other inmates.

54. Dozens of grievances, complaints, or requests for medical attention were filed by Plaintiff and members of the class and submitted to prison officials, all of which were ignored. The officials knew there was a substantial risk of serious harm to Plaintiffs and members of the class, but failed to act.

55. Despite the numerous pleas for medical assistance, the Defendant did not even summon a medical professional to examine Plaintiff or members of the class.

56. Prison officials, including the Warden and Assistant Warden, the prison guards, and nursing staff, all had actual and/or constructive knowledge of a widespread scabies infestation spreading throughout the Defendant's facility. These officials had knowledge of the Plaintiffs' asserted serious needs, or were aware of the circumstances clearly indicating the existence of such needs, or subjectively perceived a risk of harm, but then disregarded it by failing to take reasonable measures to abate it.

57. The Defendant refused to provide Plaintiff with his prescription medication. The Defendant retaliated against other inmates, including inmate J.N., for requesting medical treatment.

58. The need to treat scabies is obvious even to a layperson. The condition visibly spread to more areas on the body of infested inmates. It is apparent that a delay in treating a scabies infestation would detrimentally exacerbate the medical problem.

59. The medical conditions of Plaintiff and members of the class worsened as a result of the Defendant's refusal to provide medical services.

60. Because of the Defendant's continued, deliberate indifference to Plaintiffs' medical needs, the inhumane conditions of confinement constituted cruel and unusual punishment within the meaning of the Eighth Amendment.

61. The pattern and practice of ignoring all inmate complaints was the product of the policies and customs of the Defendant.

62. The prolonged deprivation of medical treatment was serious and addressed the specific, basic human need for medical treatment and access to medical treatment. The deprivation to Plaintiff and members of the class was sufficiently severe to constitute inhumane prison conditions.

63. The Defendant acted with malice when it retaliated and disciplined Plaintiff class members for exercising their right to demand medical treatment.

64. As a result of the Defendants' actions, Plaintiffs were deprived of fundamental rights guaranteed by the United States Constitution, including the right to adequate medical care for their serious medical needs while in the custody of the state. The Defendant's actions described herein violated the Eighth Amendment's prohibition against cruel and unusual punishment, and the Fourteenth Amendment's guarantee of substantive due process.

65. As a direct and foreseeable result of the Defendant's violations of Plaintiffs' rights, Plaintiffs have suffered and will continue to suffer physical injury and scarring, the nature of which is permanent.

## COUNT II: Violation of Plaintiffs' Rights to Due Process for Failure to Protect and Exposure to State Created Danger

66. Plaintiff and members of the class were involuntarily confined or restrained against their will pursuant to a governmental order or by the affirmative exercise of state power by the Defendant.

67. By virtue of the special relationship of the state-imposed custodial setting, the Defendant was under an affirmative obligation to spend its resources to protect Plaintiff and members of the class from harm.

68. The Defendant had exclusive control over the movement and placement of inmates in its custody. The Defendant knowingly and intentionally transferred infested inmates into the crowded cells of healthy inmates, placing them in close proximity to a dangerous contagion. Plaintiff and the class members had no ability to transfer away from infested inmates.

69. The Defendant's failure and refusal to treat the scabies infestation allowed it to spread to new hosts and caused the infestation to intensify and spread. The Defendant therefore was the primary cause of the dangers to which Plaintiff was exposed and increased the vulnerability of Plaintiffs to these dangers.

70. The Defendant, having created the danger confronting the Plaintiff, owed a corresponding duty to protect Plaintiff by isolating those infested with scabies and to immediately treat them.

71. The Defendant's failure and refusal to acknowledge or respond to the scabies infestation deprived Plaintiff and members of the class of their rights to due process, guaranteed by the Fourteenth Amendment to the U.S. Constitution.

## COUNT III: Failure to Train

### [42 U.S.C. § 1983]

72. The Defendant failed and refused to train its employees upon the proper methods and means to detect, prevent, and treat scabies infections within its facility. The incidents of infestation were prevalent, involving dozens of inmates.

73. The Defendant's refusal to acknowledge the infestation, when confronted with dozens, if not hundreds of medical requests and grievances, is indicative of a profound lack of understanding, and is evidence of a failure to train.

## CLASS ACTION

74. Plaintiffs seek class certification of all claims pursuant to Fed.R.Civ.P. 23. The Defendant has acted or refused to act on grounds that apply generally to the class, so that the claims for damages and for final injunctive relief is appropriate respecting the class as a whole.

75. The class is defined as all male inmates exposed to and infested with scabies, who are, who have been, or who in the future may become, housed at the Defendant's facility in Davidson County.

76. The number of persons whose rights have been similarly violated by the Defendant are too numerous to join in this action. The Plaintiff class members are readily identifiable using records maintained in the regular course of business by Defendant.

77. The questions of law described in this Complaint and the facts regarding them are common to all persons who were exposed and subsequently contracted scabies because of the acts of the Defendant.

78. One common question is whether the Defendant has a policy or practice of refusing to provide Plaintiffs with medical care and retaliating against them when they seek outside medical care.

79. Another common question is whether the Defendant fails to train its employees adequately in regard to the medical needs of inmates infested with scabies, in deliberate indifference to the obvious need for such training, and whether it maintains its lack of training in deliberate indifference to the serious medical needs of its inmates infested with scabies.

80. The claims of the Plaintiff are typical of claims of this class, as their claims arise from the same policies, practices, acts, and omissions as those of the Plaintiff class. The named Plaintiffs' claims are based on the same theory as the claims of the respective class.

81. Plaintiff has been injured as a result of the Defendant's actions addressed in this lawsuit in the same way as the other members of the proposed class.

82. The Plaintiff will fairly and adequately protect the interests of the class. The named Plaintiff does not have any interests antagonistic to the interests of the class.

83. By way of this lawsuit, the named Plaintiff, on behalf of the proposed class, seeks in part to enjoin and restrain the unlawful acts and omissions of the Defendant.

84. The prosecution of separate claims would create a risk of inconsistent adjudications among members of the proposed class, and might establish inconsistent standards of conduct up the Defendant.

85. Adjudications with respect to individual members of the class would as a practical matter be dispositive of the interests of other members not parties to the adjudication, and might substantially impair or impede their ability to protect their interests.

86. The interests of Plaintiff as a class representative are identical to the interest of each class member.

### INJUNCTIVE RELIEF

87. The class members who are currently incarcerated have no plain, adequate or complete remedy at law to redress the wrongs alleged herein, and injunctive relief sought herein is their only means of securing adequate relief.

88. The class members are now suffering, and will continue to suffer, irreparable injury from Defendants' unlawful conduct as set forth herein, unless enjoined by this Court.

89. Plaintiff class members seek a permanent injunction enjoining the Defendant, its agents, employees, and all those acting in concert with the Defendant under color of state law, from continuing to violate the Eighth and Fourteenth Amendments of the U.S. Constitution and to immediately cease intimidating, threatening, and retaliating against inmates for demanding medical care for their serious medical needs and to immediately provide adequate oral and topical medication sufficient to fully treat all those diagnosed with scabies.

90. Plaintiff class members seek a permanent injunction requiring the Defendant to provide a full medical staff adequate to meet the needs of those infested with scabies and capable of dispensing medication and monitoring their treatment until completion.

### DAMAGES

91. Plaintiff brings this suit for all damages recoverable by law including, without limitation, damages for personal injury, for pain and suffering caused in the past and future, for loss of enjoyment of life past and future, for lost wages, for impairment of the Plaintiff's

17

capacity to earn income, and for all medical expenses which are reasonable and necessary and made necessary by the acts and omissions of the Defendant.

92. In addition, because of the reckless and intentional conduct of the Defendant, Plaintiff and each member of the class are entitled to punitive damages.

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, pray for judgment as follows:

1. That process issue to the Defendant to plead or respond in the time provided by law;

2. That the Court determine, as soon as practicable, and consistent with the requirements of Fed. R. Civ. P. 23, by order that Plaintiff's proposed class action may be maintained, and provide notice as may be appropriate pursuant to Rule 23;

3. That the Court upon final hearing declare and find that the defendant was deliberately indifferent to the health and safety of the Plaintiff class members;

4. That Plaintiff class members be awarded a judgment against the Defendant for all damages available under Tennessee and federal law as will fully compensate the Plaintiff class members for all injuries caused by the Defendant's actions and failure to act, as alleged herein;

5. That Plaintiff class members be awarded punitive damages for the Defendant's fraudulent, intentional, reckless, and malicious conduct;

6. That this Court find that the policies, practices, procedures, conditions and customs of the Defendants are violative of the rights of Plaintiff class members as secured by the Eighth and Fourteenth Amendments of the U.S. Constitution.

7. That Plaintiff class members be awarded the costs of bringing this suit, including reasonable attorney's fees and litigation expense pursuant to 42 U.S.C. § 1988 and applicable law;

8. That Plaintiffs and the other Members of the Class be awarded such general relief to which they may be entitled, at law or in equity.

Respectfully submitted,

THE BLACKBURN FIRM, PLLC

*[signature]*

W. Gary Blackburn (#3484)
Bryant Kroll (#33394)
213 Fifth Avenue North, Suite 300
Nashville, TN 37219
P: (615) 254-7770
F: (866) 895-7272
gblackburn@wgaryblackburn.com
bkroll@wgaryblackburn.com

Jeffery S. Roberts, #20263
JEFF ROBERTS & ASSOCIATES, PLLC
213 Fifth Avenue North, Suite 300
Nashville, TN 37219
P: (615) 425-4400
F: (615) 425-4401
Jeff@middletninjury.com

R. Joshua McKee
THE MCKEE LAW FIRM
213 Fifth Avenue North, Suite 300
Nashville, TN 37219
P: (615) 425-4400
F: (615) 425-4401
rjm@rjmckeelaw.com

*Attorneys for Plaintiffs*

19